**No. 59910.**—Hercules Antiques and The Danwill Company *v.* United States, protest 216798–K (New York).

WILSON, Judge:  The essential point for determination in this case is one of fact.  It is admitted by all the parties that the merchandise here involved, consisting of a quantity of secondhand or antique blown glass articles (decanters, compotes, etc.), and known in the trade as Dutch crystal, was imported into the United States directly from Holland.  It also appears from the record that the

imported glass was not manufactured in Holland, but originated in Bohemia, or Czechoslovakia. While the United States appraiser valued the glass articles now under consideration in florins at the market value in Holland, the collector of customs treated the goods as indirect importations from Czechoslovakia, a nation under Communistic domination, and refused to give the importer the benefit of the trade agreement applicable to importations from Holland, but inapplicable to nations in the Soviet orbit. The only issue presented, therefore, is whether the merchandise under consideration is an import from Holland, or whether it must be considered as having been indirectly imported from Czechoslovakia.

Plaintiffs do not question the classification of the glassware under paragraph 218 (f) of the Tariff Act of 1930 providing for "Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, * * * 60 per centum ad valorem," but claim that the merchandise should be assessed with duty at the rate of 30 per centum ad valorem under the pertinent paragraph of the act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, which reduces the tariff on such merchandise to "50¢ on each article or utensil, but not less than 30% nor more than 50% ad val." Since the President of the United States, by proclamation T. D. 52788, dated August 1, 1951, supplemented by T. D. 52837, excluded importations from Czechoslovakia from the reduced rates provided for under T. D. 51802 and T. D. 51898, *supra*, the Government contends that the glassware under consideration is not entitled to the reduced rate, on the theory that it is an indirect importation from Czechoslovakia.

Only one witness testified. Louis Briller, called on behalf of the plaintiffs, was an antique dealer with 25 years' experience. At the time of the trial, he was a partner in the firm of Hercules Antiques, which partnership was organized in Amsterdam, Holland, in 1930. After operating there for 9 years, it transferred its business to the United States in 1939 (R. 6–7). The antique merchandise handled by the Hercules partnership included such articles as the glassware constituting the importation in question (R. 7–8). Mr. Briller identified the blown glassware constituting the importation as similar to glass articles with which he had been acquainted for many years. He stated that "In the trade we call this Dutch crystal, because of the mere fact that so much of it is and was found in Holland that some people even thought it had been manufactured in Holland. To my knowledge, which is fairly thorough, this merchandise has not been manufactured in Holland" (R. 11).

Mr. Briller also testified as follows:

Q. Mr. Briller, do you know of any other type of glassware that has the same characteristics as the merchandise at bar?—A. I know of glassware that has the same characteristic as to being polished and cut, but not of having this difference in color.

Q. And what particular color was that?—A. This was a yellow brownish color, very slight, but quite different.

Q. Did you purchase the merchandise indicated on that invoice as being made in Bohemia?—A. Yes, sir. (R. 11–12.)

In response to the question as to where the merchandise was purchased, Mr. Briller answered:

In Holland, in auction rooms or from antique dealers or second-hand dealers. (R. 12.)

On cross-examination, the following facts were elicited from Mr. Briller:

X Q. Is there anything on the invoice to disclose that any of this merchandise was purchased at an auction room or rooms or from second-hand dealers?—

A. Here de Mey is a dealer in Amsterdam that I know personally, who goes from city to city and buys up merchandise. Here is a man by the name of Driessen Arnhem, who has a very large store there—antique dealer. Den Haag has a store in the Hague. And here is an auction, Rosengrok, in Amsterdam. (R. 19.)

The names referred to in the foregoing answer by Mr. Briller appear as sellers on the invoice.

The witness further testified that he had purchased merchandise similar to the importation in Holland and was familiar with the market there in which such merchandise was purchased and sold at the time of the importation (R. 19–20).

From the official papers, which were moved into evidence (plaintiffs' collective exhibit 1 (R. 21)), it appears that the merchandise was purchased in Holland from dealers whom the witness Briller recognized as antique dealers and auctioneers. In the absence of any evidence to the contrary, therefore, we are of the opinion that the plaintiffs have established that, at the time the glassware in question was exported from Holland, it had become part of the commerce of that country and had lost any connection that it had formerly had with Bohemia or Czechoslovakia, or any other nation in which it had been manufactured.

In view of the finding of fact that the merchandise, at the time of exportation, constituted goods belonging to citizens of Holland, the case of *Camera Specialty Co., Inc.*, and *Rohner Gehrig & Co., Inc.* v. *United States*, 34 Cust. Ct. 27, C. D. 1672, is applicable. In that case, the court held:

Admittedly, any importations from the Russian-occupied Zone of Germany are not entitled to the benefits of the trade agreement, while those originating in the Western Zone of Germany are properly dutiable under the lower rate, as provided in the agreement in question.

The sole issue presented in this case is whether the lenses and lens parts, as they were imported in their improved condition from the Western Zone of Germany to the United States, were imports, directly or indirectly, from the Russian Zone of Germany, or whether they were direct imports from the Western German Zone.

Upon finding that the goods in question had not entered the United States as goods shipped directly or indirectly from the Russian Zone of Germany, the court, in the above-cited case, held the involved merchandise entitled to the benefits of the trade agreement. See also *D. & B. Import Corp.* v. *United States*, 29 C. C. P. A. (Customs) 65, C. A. D. 172, in which our appellate court held that Cuban rum, shipped to Bermuda and then exported from Bermuda to the United States, had lost its Cuban identity.

In view of our finding that the goods under consideration had become merchandise belonging to citizens of Holland before being shipped to the United States, the cases cited by defendant are not applicable.

We are of the opinion and hold that the glassware under consideration is properly entitled to the reduced rate of duty claimed. Accordingly, we hold the blown glass articles in question properly dutiable under paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, at the applicable rate provided for therein, namely, "50¢ on each article or utensil, but not less than 30% nor more than 50% ad valorem." The protest is sustained. Judgment will be entered accordingly.